UNITED STATES v. FOOD AND GROCERY BUREAU OF SOUTHERN CALIFORNIA, Inc., et al.

No. 14952-Y-Cr.

District Court, S. D. California, C. D.

Nov. 15, 1941.

Tom C. Clark, Sp. Asst. to Atty. Gen., and A. Andrew Hauk and Robert J. Rubin, Sp. Attys., both of Los Angeles, Cal., for the United States.

Mitchell, Johnson & Ludwick and Byron C. Hanna, all of Los Angeles, Cal., for defendants Certified Grocers of California, Ltd., Caler Grocery Company, Ltd., Clayton Whiteman, Sam Seelig, Morris Weisstein, Miller Allen, Henry J. Carty, T. I. Lingo, Isador Saul, and T. A. Von der Ahe.

Fred Horowitz, of Los Angeles, Cal., and Riccardi, Webster & Donahue and Wilton W. Webster, all of Pasadena, Cal., for defendants Colonial Wholesale Grocery Co., Ltd., State Wholesale Grocery Company, Market Basket, and W. L. Wright.

Sarau & Thompson and H. L. Thompson, all of Riverside, Cal., for defendants Alfred M. Lewis, Inc., and Paul A. Lewis.

J. Wesley Cupp, Otto Christensen, D. G. Montgomery, Beilensen & Berger, and Eugene Sax, all of Los Angeles, Cal., for defendants Food and Grocery Bureau of Southern California, Inc., Southern California Retail Grocers Association, Spartan Grocers, Ltd., United Jewish Retail Grocers of California, S. M. White, E. G. de Staute, Myer Pransky, Clarence M. Plumridge, Harry R. Zenor, George Hagmann, Jr., and Ben Roth.

Williamson, Hoge & Judson, Harold Judson, and Emil Steck, Jr., all of Los Angeles, Cal., for defendants Smart & Final Co., Ltd., and A. W. Lutz.

Lawler Felix & Hall and Max Felix, all of Los Angeles, Cal., for defendants Haas, Baruch & Company, Karl Triest, and Ralph R. Brubaker.

YANKWICH, District Judge (after stating facts as above).

*On the Demurrer:*

■ A thorough study of the indictment, in the light of the latest decisions on the subject, leads me to the conclusion that it charges with sufficient certainty a conspiracy, the object of which is "to restrain or control the supply entering and moving in interstate commerce or the price of it in interstate markets," and which the Supreme Court, ever since the second Coronado case (Coronado Coal Co. v. United Mine Workers, 1925, 268 U.S. 295, 310, 45 S.Ct. 551, 69 L.Ed. 963), has held to be a direct violation of the Anti-Trust Act. And see: United States v. Trenton Potteries Co., 1926, 273 U.S. 392, 397, 398, 47 S.Ct. 377, 71 L.Ed. 700, 50 A.L.R. 989; Ethyl Gasoline Corporation v. United States, 1940, 309 U.S. 436, 458, 459, 60 S.Ct. 618, 84 L.Ed. 852; United States v. Socony-Vacuum Oil Co., 1940, 310 U.S. 150, 212-218, 60 S.Ct. 811, 84 L.Ed. 1129.

And there are adequate allegations in the indictment to show that, despite the apparent local character of the activities of the defendants, the direct aim, purpose and effect of their acts is the kind of restraint of interstate commerce which these cases denounce. See my opinion in United States v. Heating, Piping & Air Conditioning Contractors Ass'n, D.C.1940, 33 F. Supp. 978.

The demurrers to the indictments are therefore overruled.

*On the Motions for Bills of Particulars:*

The plaintiff, United States of America, is ordered to furnish to the defendants the following particulars concerning the matters embraced within Counts One and Two of the indictment:

■ I. As to Paragraph 17, Page 8 of the indictment:

(1) State whether it is claimed that said drop shipments alleged in Lines 23–27, Page 8, constitute interstate commerce.

(2) State whether it is claimed that the retailers were engaged in interstate com-

merce by reason of receipt of such drop shipments through the wholesalers.

(3) Amplify the allegation in Paragraph 17, Line 23, that a substantial amount of the product so sold and distributed, is shipped directly and delivered in drop shipments from various States of the United States other than the State of California to the defendant retailers by specifying what amount of products sold and distributed is so received and what amount of canned milk so sold and distributed in Southern California Territory is shipped from other States of the United States.

II. As to Paragraph 18, Pages 8 and 9 of the indictment:

(1) State whether the Government in support of its application of the "conduit" theory, intends to rely, in addition to the continuous flow of shipments set forth in said paragraph, upon any facts showing that the price of commodities originating out of the State, other than those covered by drop shipments, was fixed in advance by the defendants.

It is further ordered that, except as hereinabove allowed, the motions of the various defendants for Bills of Particulars are, and each of them is, denied.